**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHAD STEVEN TINGLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11–cv–0896–MJR–SCW** |
| | ) | |
| **MARTIN KEIM and KYLE NAVE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**REAGAN, District Judge:**

### INTRODUCTION

*Pro se* Plaintiff Chad Tingley, an inmate at the Federal Correctional Institution in Pekin, Illinois (FCI Pekin), is serving a sentence for methamphetamine and firearms violations.[1]  In October 2011, he sued five defendants—all of them members of the Marshall, Illinois, police department—under 42 U.S.C. § 1983, alleging that Defendants falsified the 2005 affidavit used to secure the search warrant that led to his conviction, thereby violating the Fourth Amendment.  On threshold review of the Complaint, the undersigned dismissed three unnamed defendants and allowed Plaintiff's claims against Defendants Keim and Nave to proceed.

Defendants filed respective motions to dismiss based on a statute of limitations defense.  By Report and Recommendation (R&R) dated March 18, 2013 and submitted via 28 U.S.C. § 636, the Honorable Stephen C. Williams, United States Magistrate Judge, recommends that the undersigned grant both motions to dismiss.  Plaintiff filed a timely objection on April 3, 2013, and the deadline for responding to that objection has elapsed.  The matter is ripe for ruling.

---

[1] Tingley pled guilty to four counts in this Judicial District in October 2006.  *See United States v. Tingley*, No. 06–cr–40003–JPG (S.D. Ill. Oct. 30, 2006).

Plaintiff's timely objection having been filed, the District Judge undertakes de novo review of the portion of the R&R to which Plaintiff specifically objected.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b).**  The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions.  *Id.*  For the reasons stated below, the Court **ADOPTS** Judge Williams' R&R (Doc. 41) in its entirety.  Analysis begins with reference to the applicable legal standards.

## LEGAL STANDARDS

### 1.  Standard Governing Motions to Dismiss

Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6), which tests the sufficiency of a complaint, is atypical.  *U.S. v. N. Trust Co.*, **372 F.3d 886, 888 (7th Cir. 2004).**  A Rule 12(c) motion for judgment on the pleadings is generally a more appropriate procedural vehicle, *Yassan v. J.P. Morgan Chase & Co.*, **708 F.3d 963, 975 (7th Cir. 2013)**, but the practical effect can be identical, *Brooks v. Ross*, **578 F.3d 574, 579 (7th Cir. 2009).**  When the complaint sets forth everything necessary to satisfy an affirmative defense, that defense may be raised in a motion to dismiss.  *Brooks*, **578 F.3d at 579.**  *Accord Logan v. Wilkins*, **644 F.3d 577, 582 (7th Cir. 2011).**

Regardless of which section of Rule 12 controls, the standard is the same.  *Hayes v. City of Chi.*, **670 F.3d 810, 813 (7th Cir. 2012)**.  A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level.  *Brooks*, **578 F.3d at 581 (citing** *Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 555 (2007)).**  Though allegations in a *pro se* complaint must be liberally construed, *McCready v eBay, Inc.*, **453 F.3d 882, 890 (7th Cir. 2006),** a prisoner plaintiff may "unwittingly plead himself out of court by alleging facts that preclude recovery," *Edwards v. Snyder*, **478 F.3d 827, 830 (7th Cir. 2007).**  In other words, dismissal for failure to state a claim is

appropriate if the existence of a valid affirmative defense "is so plain from the complaint that the suit can be regarded as frivolous." *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010). *See also Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002) (validity of the affirmative defense must be "apparent" and "unmistakable").

### 2.  Standard Governing Statute of Limitations

Federal courts must look to state law for the limitations period in § 1983 actions. **42 U.S.C. § 1988(a);** *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). The state limitations period for personal injury actions is applied in its entirety, complete with related tolling provisions. *Ray*, 662 F.3d at 773. In Illinois, that period is two years. *Id.*; 735 ILCS 5/13–202. Federal law, however, controls when the statute of limitations begins to run: a plaintiff's claim accrues when he "knows or should know that his … constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing *Hileman v. Mays*, 367 F.3d 694, 696 (7th Cir. 2004)). Pinpointing the accrual date requires a two-part inquiry: (1) identification of the injury and (2) determining when the plaintiff could have sued for that injury. *Draper*, 664 F.3d at 1113. In cases where a purportedly false affidavit lead to Fourth Amendment allegations, the limitations period begins to run as soon as plaintiff knows (or should know) about the search and the facts making it unlawful. *Thomas v. McElroy*, 463 F.App'x 591, 592 (7th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 392–94 (2007), *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010), and *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997)).

ANALYSIS

Plaintiff filed this lawsuit on October 4, 2011. If his claims accrued, as he argues, sometime in early October 2009, then the suit escapes the statute of limitations defense.[2] Plaintiff

---

[2] Plaintiff claims that, pursuant to a FOIA request inspired by his mother's discovery of other, similar allegations against Defendant Keim, he received information "concerning the misconduct of Defendant Keim" on October 2, 2009. This lawsuit was filed on October 4, 2011—two years and two days after that date, and past the expiration of the limitations

posits that he neither knew (nor should have known) about the false 2005 affidavit until October 2009, when, pursuant to a FOIA request, he received information from the City of Marshall concerning an internal investigation into Defendant Keim's fabrication of incident reports and possible *Brady* violations in other criminal investigations.

By itself, Plaintiff's argument may have sufficed to create an issue of fact as to when he should have known about Keim's false affidavit. But the argument does not exist in a vacuum: Plaintiff's Complaint unmistakably indicates precisely when he knew about Keim's fabrication (and therefore should have known about Nave's complicity). In pertinent part, his Complaint alleges:

> 17. Approximately 2 weeks following Plaintiff Tingley's complaint to the Sheriff, he was approached by Defendant Keim at Casey's General Store in Marshall. Defendant Keim proceeded to threaten Plaintiff Tingley for making the complaint and promised to put Plaintiff and his father . . . in prison.
>
> 18. The following day after Plaintiff Tingley's encounter with Defendant Keim at Casey's Plaintiff Tingley lodged a formal complaint concerning the matter with Defendant Nave at the Marshall Police Department. Plaintiff Tingley relayed the facts described in paragraph 17 to Defendant Nave, who made written notes of the interview. Defendant Nave informed Plaintiff Tingley that a report would be filed.
>
> 19. In the several months that followed Plaintiff Tingley's complaint, Defendant Keim was repeatedly observed driving past his residence and the home of [Plaintiff's father]. Defendant Keim was also observed running away from [Plaintiff's girlfriend's] residence . . .
>
> …
>
> 21. On August 26, 2005, Defendant Keim . . . executed a search warrant at Plaintiff Tingley's residence. As a result of this search, Defendant Keim claimed to uncover evidence that methamphetamine was being manufactured in Plaintiff's barn. Defendant Keim also claimed to discover a number of firearms from Plaintiff Tingley's residence. The [seizure] of this evidence ultimately gave rise to a federal indictment against the Plaintiff…
>
> 22. Following Plaintiff Tingley's [August 2005] arrest in the matter, he had the opportunity to review the affidavit and complaint filed by Defendant Keim in

---

period. But it was dated on October 1, 2011, and the Court will assume, for the purpose of this motion, that it was delivered to prison officials that day. *See U.S. v. Craig*, **368 F.3d 738, 740–41 (7th Cir. 2004) (applying "mailbox rule"—that a pleading is timely if deposited in an institution's internal mail system on or before the last day of filing—to a prisoner's document).**

support of the search warrant executed at his residence.  Upon reviewing the contents of the document, … *Plaintiff Tingley realized the information contained therein was false.  Specifically, the information relayed to Defendant Keim by the confidential sources is untrue.* Plaintiff Tingley relayed the information to his attorney, Todd Reardon.

23. During the prosecution of the federal indictment against him, Plaintiff Tingley regularly informed his attorney that the evidence allegedly discovered in his barn did not belong to him and he was unaware of its presence.  However, Mr. Reardon refused to act on Plaintiff Tingley's complaints because Defendant Keim was a police officer.  Reardon informed Plaintiff that his only option was to plead guilty. Plaintiff Tingley followed counsel's advice and entered a guilty plea on October 30, 2006. …

(Doc. 1, 6) (emphasis added).

It is clear, then, that Plaintiff knew of Keim's threats to imprison him, knew that Keim had falsely "claimed" to discover evidence on his property that did not belong to Plaintiff, knew that Keim had authored the affidavit that led to the search of his barn (which in turn led to his arrest), knew that Nave had ignored Keim's malfeasance, and knew that falsified portions of the affidavit that described Keim's conversations with confidential informants were written by Keim himself.  Crucially, it is also clear that Plaintiff knew these things, and could have sued Keim and Nave for Fourth Amendment violations, before he pled guilty in October 2006.  *See Draper*, 664 **F.3d at 1113.**

On the face of the Complaint, therefore, Plaintiff set forth "everything necessary" to satisfy the statute of limitations defense.[3]  Because he knew then (or at least, given the facts pled, should have known) that Defendant Keim falsified the affidavit at the heart of this case, Plaintiff's claim accrued (at the very latest) in October 2006—almost five years before he filed the instant lawsuit.  He has pled himself out of court.  *Edwards*, 478 **F.3d at 830.  *See also Thomas*, 463 F.App'x at 591–92 (dismissal of Illinois inmate's Fourth Amendment suit on statute of**

---

[3] Plaintiff admits as much when, in his objection to the R&R, he argues that his complaint, liberally construed, states "that [P]laintiff assumes on August 2005 that Defendant's Affidavit was false."  (Doc. 44, 6–7).

**limitations grounds affirmed where it was clear he knew about a policeman's purportedly bogus affidavit more than two years before he filed suit**).

CONCLUSION

Plaintiff's claims are barred by Illinois' two-year statute of limitations.  The Court **ADOPTS** in its entirety Judge Williams' Report and Recommendation (Doc. 41), and **GRANTS** the Motions to Dismiss filed by Defendants Keim (Doc. 15) and Nave (Doc. 35).  Plaintiff's claims against Keim and Nave are **DISMISSED with prejudice**.

No claims remain in this case, so the Clerk is **DIRECTED** to enter final judgment against Plaintiff Tingley and in favor of all Defendants, and to close this case.

**IT IS SO ORDERED.**

**DATE: May 10, 2013**                                     /s/ *Michael J. Reagan*
                                                          **MICHAEL J. REAGAN**
                                                          United States District Judge